The second case today, number 231035, United States v. Danny Velkez-Vasquez-Rodrigue. Attorney Loftstein, would you please come up and introduce yourself for the record? Good morning, your honors. My name is Ted Loftstein, and I am here on behalf of Ms. Vasquez-Rodrigue. Please, please go forward. Thank you. So, I hope to use these ten minutes first and foremost to answer any questions you may have, but beyond that, to try to make three quick points. One is what we agree on in terms of eligibility for a duress instruction. Second is a brief response to the government's very brief harmless error argument. And third is a point about the standards of review on appeal. Let me just go directly to a question regarding the duress. In this particular case, there were like probably 35 transactions. Your client participated in over 30, and then that's when the alleged duress takes place. So, how does that help her? Because it's kind of like towards the end of everything that's happened. So, we completely agree that it has to be duress first, crime second. Okay? And it wouldn't make sense any other way. Duress is part of a lot of criminal conspiracies once you join. You know, the most storied ones say once you join, you're in for life. So, that certainly implies that you're signing up for an element of duress. So, yes, absolutely, the duress on December 23rd, the threats that Ms. Vasquez-Rodriguez received, that has to happen before the crime. The definition of duress is a four-pronged standard, but the first part of it is that the crime was committed as a result of an immediate threat of serious bodily injury or death. What happened between early December and December 23rd, when the threat was made, and this is Ms. Vasquez-Rodriguez's argument to the jury below, was that she was not a member of the conspiracy. She was helping her husband collect a drug debt. Her entrance in the conspiracy was not... Doesn't that make her a member of the conspiracy? You can have a very minimal, minor, minute role, but you're still aiding and abetting and participating in the conspiracy. She knows what's happening. She's helping her husband. All she has to do is at least agree with one other member of the conspiracy, and she's in. I mean, the only element of the crime is that the government has to prove, beyond a reasonable doubt, that she, in her own mind, joined the conspiracy and decided to further its objectives. But I don't agree that any... The government doesn't have to prove any conduct, and I don't agree that when the government proves conduct, that the conduct proves the participation in the conspiracy. The government has to prove that she intended to join. There's lots of people who help criminal... And that's a jury issue. That's a jury matter, whether she joined the conspiracy. But if the jury determines she joins, or, you know... I'm having trouble. Let me say this. I sat in the district court for over 15 years, and I'm trying to think how I would give the district judge a duress instruction when, you know, there's evidence that there's been participation in a conspiracy. What are you going to tell the jury? You know, duress starts on this date, but if you find duress, then you have to quit all that, or separate... How would I do that? Because it's... I've never seen this, you know... Your Honor, I don't think it's that complicated. The jury would have to be instructed on what duress is, but then the court would have to say that part of your job, you know, if you believe the government has proven beyond a reasonable doubt that she joined the conspiracy at some point, you have to determine if the duress came before or after she joined the conspiracy. But why do you focus on whether she joined the conspiracy? Isn't it enough if you go and say, you know, sign me up for selling drugs and collecting money, without specifying which conspiracy you're signing up for, but you're just signing up for the illegal drug sales business? Haven't you disqualified yourself from a duress instruction because you've intentionally, voluntarily placed yourself in a position where duress is foreseeable? And under our standards, that disqualifies you. So I think you're skipping to the third and fourth prongs of the standard, and those standards have to do with what happened before the duress. So you have four prongs. The first prong, you know, the crime is defined as the crime was committed as a result of. The first prong is an immediate threat of serious bodily injury or death. So we agree that she can't have eligibility for this instruction unless a rational juror, a reasonable juror could find that she didn't join the conspiracy until after the threat. Counsel, please, could you get to the point? The district court limited its ruling to the final prong and made two rulings that she placed herself in a situation where it would be probable that she would be subject to duress, okay? And she had a reasonable opportunity to escape or otherwise frustrate the threat by not joining an investigation. And not continuing. So why does the evidence not clearly show that the district court was correct on both of those? Answer those questions. I will. But in order to do so, I have to say that the district court was also correct that it was correct when it determined the first two prongs had been met. And the only way No, it did not. It merely said there was sufficient evidence giving your client every chance of survival. And therefore, it wasn't going to rely on those two prongs. The only way that the court could do that is if the court implicitly determined that the rational juror could find that the conspiracy, that she didn't join it until after the threat. Okay, I'm missing the linkage. Could you get to the fourth prong, please? Sure. So between early December and December 23rd, it is true that she helps her husband who has just become incarcerated and is a conspirator in the drug conspiracy. She helps him through attempts to collect on the drug debt from the single, that we just talked about. A $42,000 drug debt. The question of whether in doing so, she, that any person would understand that they were signing themselves up for duress, that's a jury question. There's not enough there for just to say that, no, the very fact that she helped her husband do that, you know, no rational person She knew it was a drug conspiracy. She benefited from it. She got paid for collecting the money and remitting it in a series of transactions, not just one, following the instructions of a guy who she reasonably understood was a Mexican Sinaloa cartel drug dealer. Correct. And she also knew she was getting directions from her husband, although she later denies this is her husband, a good friend of his from the Dominican Republic who had moved to Mexico and entered the drug dealing business. She didn't understand what she was doing? Well, I think that she testified that she did understand. You know, she acknowledged that she understood that she was collecting a drug debt, not just a debt. She acknowledged that she understood that Ricky in Mexico was the source of supply of the drugs. But again, the lower court would have to have been wrong when it determined that there was enough evidence for the first two prongs, unless the lower court believed that a reasonable juror could find that she had not yet joined the conspiracy. I don't agree that everybody who helps a criminal conspiracy is a member of the conspiracy. I think criminal conspiracies have independent contractors, just like other organizations do, people who help in exchange for something but are not part of the broader conspiracy. I think we know when a gangster goes in a restaurant and tips a maitre d' a big tip, let me know if this person comes in the restaurant, that maitre d' does not become part of the criminal organization by accepting the tip and agreeing to let them know if they see a certain individual come in the restaurant. So a rational juror, this is a difficult case. There's no doubt about it. It's a difficult arrest offense. You keep suggesting that the test, if I'm following you correctly, is we need to see if she joined the conspiracy or not and relate that in time to December 23 threat. But our test, our four-factor test, doesn't hinge on the technical joining of the conspiracy or not. It simply says you can't claim the defense if you recklessly place yourself in a situation in which it was probable you'd be subjected to duress. And we have generally said I thought that if you start on the drug selling business, you've kind of done that. Otherwise we'd have a situation where every drug group, the kingpin could call them together and say anyone here who doesn't do this, I'm going to kill, and then would have effectively immunized everybody when they got caught because they would say I was under duress. So you have to differentiate people who have put themselves in a situation where they will be duressed and those who have not. So what I don't agree with in what you're saying is that the beginning of the definition is the crime was committed as a result of. The crime here is not collecting a drug debt. The crime is being guilty of being a member of the conspiracy. And so that point in time is not necessarily at the moment that she does something or other to help the conspiracy. So I believe that the first two prongs have to come, the first two prongs describe the duress itself, right? Those two have to come before the crime. And so in this case, she would have no eligibility unless a reasonable juror could believe that she didn't actually join the conspiracy until after. Sure, but what about before the duress if she'd put herself in a position she's disqualified? The third and fourth prongs in this case describe her activities up until the threat. If a juror could find that those activities would not place her on notice, that she was signing herself up for threats of death against her sister and family members, then she has eligibility for the duress instruction. So you've got four prongs. The first two have to do with the duress itself. The last two have to happen before the duress. That's the structure of the instruction. So I probably have not articulated this very well, but my red light is on, so I have to stop. I have one quick question. Were you the attorney below, or you were not the attorney below? I was not the attorney below. Did the attorney below, for purposes of sentencing, I know she got 45 months, did she, he or she argue duress as a mitigating factor? Because even if you're not entitled to it for purposes of guilt, you can still use it at the sentencing place. Was that ever argued? Obviously, sentencing is not being argued here. I really don't remember, because I didn't litigate or any sentencing appeal issue, so I didn't even look at that stuff again before oral argument. Okay, thank you. Thank you. Attorney Lockhart, please introduce yourself for the record. Good morning. Donald Lockhart for the government, and may it please the Court. The defendant admitted in her own testimony that about two weeks before the alleged threat, she agreed with a Mexican fentanyl supplier, Ricky, in Mexico, that she would help him collect a $42,000 debt stemming from a one-kilogram fentanyl transaction. And not only that, but afterwards, she then, before the threat, pressures the CW to come up with at least $20,000-$25,000 of that $42,000, and thereafter, before the threat, collects $20,000 in drug proceeds for Ricky and transmits that down to Mexico and the Dominican Republic in 30 separate money transfer transactions. She admits to all of this in her own testimony, so there's no question that well prior to the alleged threat on December 23rd, she has entered into and completed an 846 drug conspiracy. Now our threshold contention in the brief is that that just debars any sort of request for a duress instruction, but whether you look at it from the standpoint of our threshold contention or you're looking at it in terms of prongs three and four, all roads lead to Rome, and I would just like to point out in connection with the prong three analysis that the district court finds that the defendant had an ample opportunity to escape or to frustrate the threat, and the defendant in her own testimony admits that she made a quote-unquote mistake in not going to the police. So she's conceding right in her own testimony that she should have done it but didn't. That concession, we feel, torpedoes any sort of prong three claim, but at the very least the district court judge here was well within his rights to find that there was an ample opportunity to escape or frustrate the threat, and as Judge Lynch pointed out, this is not the case of a fentanyl supplier in Mexico who is just some ghost-like figure that nobody knows where he lives or who he is. He's actually the childhood friend of the defendant's boyfriend, and they used to all talk together back when he was in Santa Domingo. Not only that, but the defendant has another friend, Wanda, who's an acquaintance of Ricky, the Mexican fentanyl supplier, as well. So the defendant has those data points. She has Ricky's phone number. She has his WhatsApp account information. She could have gone to the police. She could have told them that information. She didn't, and she admitted in her own testimony that that was a mistake. She should have done it. As to prong four, the district court supportably found. Yes? Mr. Lockhart, she didn't have to go to the police. All she had to do was to decline to help the drug conspirators. Isn't that correct? Well, that's true, Your Honor, and it actually ties into our prong one argument. The district court focused on prongs three and four, and as you pointed out, with respect to prong one, the district court said it had, I believe it said doubts about whether the defendant had satisfied that prong, but more or less threw the defense above on that issue. But this is not a case where there was any immediate threat of harm either. It was a, even by the prong account, a vague threat of future harm. She has Ricky saying that he knows some people up in the United States who could harm her or kill her potentially. There's nothing about who these people are when they're prepared to act, anything like that. So we submit she's failed prong one as well. But again, our threshold contention is that because under the Shabani decision of the Supreme Court, there's just no need for an overt act at all. Once the defendant agreed to do this collection of the $42,000 on December 9th or 10th, about two weeks before the alleged threat, that sort of game set and match, we believe. The defense of duress is simply off the table at that point because the crime of conspiracy is complete, and that's essentially the holding of the Second Circuit in the case that we have a pod log involving a sequence of events that parallels our sequence here. But unless the court has... Let me ask you one other question. I asked this to a composing counsel. My concern here is there's, again, like 30 transactions, and then let's assume there was actually duress after transaction number 30. That doesn't exculpate her. It's not retroactive having an issue, and you agree with that, right? Well, what I would say is actually there might be room for a duress offense in a situation where the jury has to make a mandatory minimum drug weight finding based on the drug amounts dealt with. That did not happen here. Well, they did actually find that she dealt in 400 grams or more... And that's why she gets under 60 months. She got 45 months. Right. And in this case, she agreed right up front to be involved in a 1 kilogram transaction. That's why we don't face the situation where... For example, let me just give you an illustration. Let's say you have a drug conspiracy that in Week 1 they deal in 200 grams of fentanyl. The defendant at the end of that week says, I want out. I'm trying to withdraw. They say, nope, you're going to continue with us. They put a gun to her head. Now we have duress. And in Week 2, they deal in 300 further grams of fentanyl. Now she's at 500. She's over the 400 gram threshold. In a scenario like that, you can imagine a defense attorney wanting to couple a withdrawal defense with a duress instruction in an effort to defeat a mandatory minimum drug quantity finding. But it would be a very different instruction than what is actually sought here. Right. It wasn't in play here for... And it would be sort of what I was asking as a district judge. How could I explain that to the jury? But it would be for a person with a mandatory minimum. You can't... Forget about the mandatory minimum. You can't simply say, forget about the last 30 transactions because now we have duress moving on forward. You can't do that. Correct. Apart from the scenario... There's no way a judge can give that instruction. A judge, of course, could say, for purposes of the drug quantity, which you have to determine, determine if there's any point there was duress and then find the drug amount, which is not the case here. Right. So apart from the sort of hypothetical that I gave, we can't see any room for a duress instruction in the context where the defendant has completed the base offense of conspiracy under 846. Once that base offense is completed, a duress instruction can't be relevant to that offense. However, you can imagine a case, again, where a duress comes up in the context of an effort to defeat a jury finding beyond a reasonable doubt that the defendant should be on the hook for a drug weight that increases the mandatory minimum. That is the only scenario. Are you aware if duress was used as a sentencing factor in this case? I'm not, but let me just point out that although the defendant was exposed to a 10-year mandatory minimum, she qualified for safety valve and that was the biggest sort of form of relief. She got 45 months, but for this, for, you know, for fentanyl and everything, it seems like it's, you know, it's a tough sentence from her perspective, but compare what we see all the time, 120 and over, or, you know, even harsher sentences, it's... She caught a huge break. Yeah, that's... Unless there are any questions, we'll rest on three. Thank you. That concludes arguments on this case.